# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RAICES, INC.,

        **Plaintiff,**

        **v.**

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

        **Defendant.**

**Civil Action No. 15-1318 (JEB)**

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Local Civil Rule 7(h), Defendant U.S. Immigration and Customs Enforcement ("ICE" or the "Defendant"), a component agency of the U.S. Department of Homeland Security ("DHS"), by and through undersigned counsel, respectfully submits this Statement of Material Facts Not in Genuine Dispute in support of its Motion for Summary Judgment.  In support of its Motion for Summary Judgment and this Statement of Material Facts, Defendant includes the **Declaration of Fernando Pineiro**, Deputy FOIA Officer of ICE's Freedom of Information Act Office (hereinafter, "Pineiro Decl.") (Exhibit 1).

## TABLE OF CONTENTS

I.   Overview of Plaintiff's FOIA Request And Background Facts ............................................... 2

II.  Overview of ICE FOIA Office's GEneral Search Tasking Procedures .................................. 3

III. Details Of Defendant's Searches And Productions Of Records.............................................. 4

      ICE Office of Enforcement and Removal Operations ("ERO").......................................... 5

      ICE Office of Acquisition Management ("OAQ") ............................................................. 7

      ICE Office of Detention Policy and Planning ("ODPP").................................................. 8

      ICE Office of Professional Responsibility ("OPR").......................................................... 9

IV. Production Of Responsive materials ....................................................................................... 9

V.  The Parties' Narrowing Of THe Issues Before The Court .................................................... 10

## I.   OVERVIEW OF PLAINTIFF'S FOIA REQUEST AND BACKGROUND FACTS

1.     By letter dated April 21, 2015, the Refugee and Immigrant Center for Education

and Legal Services ("RAICES" or "Plaintiff") made a request under the FOIA to ICE requesting

the production of records described as follows:

> RAICES seeks information regarding the ***layout and security system of
> the laundry room*** at Kames County Residential Center ("Kames").   To
> this end, RAICES seeks disclosure of any and all records, including
> electronic documents and communications in the custody of the
> Department of Homeland Security ("DHS"), Immigration and Customs
> Enforcement ("ICE"), The Geo Group, Inc. ("GEO"), and any other
> subcomponents or subcontractors (collectively the "DHS"), as described in
> the specific requests listed below….
>
> Specific Requests and Instructions
>
> 1.   "***Physical and electronic records in regards to the laundry room***",
>      including (i) a blueprint of the laundry room; and "[s]chematics of the
>      laundry room that include" locations and dimensions of walls,
>      appliances, furniture, security cameras, doors, windows, and windows
>      in the laundry room.
>
> 2.   "***Policies and procedures related to the laundry room***, including but
>      not limited to" (i) use of the laundry room by detainees; (ii) use of the
>      laundry room by staff; and (iii) "[a]ny other policies and procedures
>      related to the laundry room".
>
> 3.   "***Policies and procedures related to security monitoring of the
>      laundry room***, including but not limited to" (i) operation of the
>      security camera(s) in the laundry room; (ii) the storage of security
>      camera footage; (iii) "[c]ompliance procedures to ensure that security
>      cameras are properly monitored"; and (iv) "[p]rocedures for when
>      supervisor review of laundry room monitoring, or security camera
>      monitoring, is expected and/or required."

Plaintiff's letter also requested a fee waiver and expedited processing.  *See **Exhibit 2 at pp. 1-2***

*(Plf's FOIA Request, dated 4/21/2015) (emphasis added).*

2.     By email dated April 22, 2015, the U.S. Immigration and Customs Enforcement's

Freedom of Information Act Office ("ICE FOIA Office") acknowledged receipt of Plaintiff's

FOIA request, provided Plaintiff with the case number for the FOIA Request (ICE FOIA case

number 2015-ICFO-78483), and denied Plaintiff's request for a fee waiver and for expedited processing.  *See **Exhibit 3** (Email Exchange Between ICE FOIA and Plaintiff, dated 4/22/2015).*

3.     On August 14, 2015, Plaintiff filed a Complaint For Declaratory and Injunctive Relief" (Doc. No. 1) and a "First Amended Complaint for Declaratory and Injunctive Relief" (Doc. No. 3).  Plaintiff's Amended Complaint alleged that ICE had "fail[ed] to adequately search for and promptly disclose responsive agency records."

4.     On December 17, 2015, ICE released responsive, non-exempt materials in response to Plaintiff's FOIA request ("December 17 Production").  The production included a letter ("FOIA Determination Letter") stating the number of pages produced, the locations searched, and the FOIA Exemptions being asserted to withhold portions of the documents:

> This release consists of twenty-five (25) pages located pursuant to a search of the ICE Offices of Enforcement and Removal Operations (ERO) and Office of Acquisition Management (OAQ).   Upon review of the responsive records ICE has determined that portions of the 25 pages will be withheld pursuant to Exemptions (b)(4), (b)(6), (b)(7)(C), and (b)(7)(E) of the FOIA.

The FOIA Determination Letter also explained the scope of the legal protections provided by each FOIA Exemptions asserted in the December 17 Production.  *See **Exhibit 4** (ICE's FOIA Determination Letter, dated 12/17/2015).*

## II.    OVERVIEW OF ICE FOIA OFFICE'S GENERAL SEARCH TASKING PROCEDURES

5.     When the ICE FOIA Office receives a FOIA request, it evaluates the request to determine which program office within ICE is reasonably expected to possess the records requested.  ***Pineiro Decl. at ¶ 11***.

6.     This determination is based on the description of the records requested and requires a familiarity with the holdings of the Defendant's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous Defendant

offices.  Factors such as the nature, scope, and complexity of the request itself are also relevant. *Pineiro Decl. at ¶ 11.*

7.      Each program office within ICE has a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office.  Each Point of Contact has detailed knowledge about the operations of their particular program office.  Upon receipt of a FOIA request from the ICE FOIA Office, the Point of Contact uses his experience and knowledge of their program office's practices and activities, his knowledge of the FOIA request, and any case-specific instructions that may have been provided by the ICE FOIA Office, to determine the appropriate individual employee(s) or component office(s) within the program office that are reasonably likely to have responsive records, if any.  *Pineiro Decl. at ¶¶ 12-13.*

8.      Per the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment – based on their knowledge of the manner in which they routinely keep records, the contents of the FOIA request – would be most likely to contain records responsive to the FOIA request.  *Pineiro Decl. at ¶¶ 14-15.*

9.      After those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's Point of Contact, who in turn provides the records to the ICE FOIA Office.  The ICE FOIA Office then reviews the collected records for responsiveness and appropriate withholdings.  *Pineiro Decl. at ¶ 15.*

**III.**      **DETAILS OF DEFENDANT'S SEARCHES AND PRODUCTIONS OF RECORDS**

10.      On April 22, 2015, upon receipt and review of the Request, the ICE FOIA Office determined that because of the subject matter of the FOIA request, there were three (3) offices reasonably likely to have records responsive to Plaintiffs' request:

4

- the ICE Office of Enforcement and Removal Operations ("ERO");
- the ICE Office of Acquisition Management ("OAQ"); and
- the ICE Office of Detention Policy and Planning ("ODPP").

*Pineiro Decl. at ¶ 25.*

11.    ODPP did not locate any responsive materials; OAQ and the ERO San Antonio Field Office provided materials that were subsequently reviewed and processed and ICE produced non-exempt, reasonably segregable portions of the responsive materials.  *Pineiro Decl. at ¶¶ 27, 29, 30, 32.*

## ICE OFFICE OF ENFORCEMENT AND REMOVAL OPERATIONS ("ERO")

12.    ERO provides enforcement of the nation's immigration laws through the identification, arrest, and removal of aliens of who present a danger to national security, a risk to public safety, and/or who are otherwise removable from the United States.  ERO also transports removable aliens and manages aliens in custody or alternative detention programs.  *Pineiro Decl. at ¶ 20.*

13.    When ERO received Plaintiff's FOIA tasking from the ICE FOIA Office, the request was submitted to Point of Contact in the ERO Information Disclosure Unit ("IDU").  The Point of Contact in IDU determined the individuals and component offices within ERO that should conduct searches of their file systems and it forwarded the FOIA request to those individuals and component offices accordingly.  *Pineiro Decl. at ¶¶ 23-25.*

14.    Upon receipt of the FOIA request tasking from the Point of Contact, the individual employees tasked to perform the search use their discretion – based on operational knowledge and subject matter expertise, the content of the FOIA request, and additional instructions provided by the Point of Contact and/or the ICE FOIA Office – to determine the

specific terms that should be searched to locate responsive documents, if any exist. ***Pineiro Decl. at ¶¶ 24-26.***

15.     Here, the Point of Contact in ERO IDU determined that the offices within ERO that were most likely to have responsive materials were the (i) ERO San Antonio Field Office; and (ii) ERO Headquarters Custody Management Division. ***Pineiro Decl. at ¶¶ 25-26.***

16.      On or about April 24, 2015, the FOIA Point of Contact in the San Antonio Field Office reviewed the substance of the request and, based on the contact's experience and knowledge of the office's practices and activities, tasked an Assistant Field Office Director ("AFOD") and a Special Assistant to the AFOD to search for potentially responsive documentation. ***Pineiro Decl. at ¶ 26-27.***

17.     The AFOD searched their government computer, including their hard drive and shared network drives, using the following search terms: "policy," "laundry," and "voluntary worker."   The AFOD located potentially responsive documentation, which was provided to ICE FOIA on September 3, 2015. ***Pineiro Decl. at ¶ 27.***

18.     The Special Assistant to the AFOD searched her paper files, her government computer, including the hard drive and shared network drives, and her Microsoft Outlook e-mail account, using the following search terms: "Karnes blueprints," "KCRC blueprints," "Karnes schematics," "KCRC schematics," and "Karnes."   The Special Assistant to the AFOD located potentially responsive documentation, which was provided to ICE FOIA on September 3, 2015. ***Pineiro Decl. at ¶ 27.***

19.     In September 2015, after review of the previously tasked search and the materials collected, ERO IDU re-tasked the search; this time tasking the ERO Headquarters Custody Management Division to search for and provide the ICE FOIA Office with all documentation

concerning the Request.  The Custody Management Division was tasked with the search because it of its role in providing policy and oversight for the administrative custody of aliens and its role as a manager of ICE detention operations.  *Pineiro Decl. at ¶ 28*.

20.     The FOIA Point of Contact for Custody Management reviewed the substance of the request; conducted a searched based on her experience and knowledge of Custody Management's practices and activities.  On October 6, 2015, the Point of Contact indicated that that the ERO Custody Management Division did not possess any records.  *Pineiro Decl. at ¶ 28*.

21.     In November 2015, after review of the previously tasked search and the materials collected, ERO IDU tasked the ERO San Antonio Field Office a second time to search for responsive records.  During this second tasking, the Point of Contact in the San Antonio Field Office determined that an additional search should be conducted and, as a result, the Point of Contact tasked an ERO Management and Program Analyst to search for potentially responsive documentation.  The Management and Program Analyst conducted a search of paper files related to GEO Group and located responsive documents that were provided to ICE FOIA for review, processing, and potential production on October 7, 2015.  *Pineiro Decl. at ¶ 29*.

**ICE OFFICE OF ACQUISITION MANAGEMENT ("OAQ")**

22.     OAQ delivers quality acquisition solutions in support of the ICE and DHS missions, including providing acquisition support to ICE Headquarters and Field Offices and to ERO to assist with the planning, awarding, and administering of contracts for law enforcement and compliance. *Pineiro Decl. at ¶ 21*.

23.     In April 2015, the FOIA Point of Contact for OAQ received the FOIA request, reviewed the substance of the request, and based on experience and knowledge of OAQ's practices and activities, tasked a Contract Specialist to conduct a search for responsive materials. *Pineiro Decl. at ¶ 30.*

24.     On or about April 22, 2015, the Contract Specialist searched a search of the government computer, including their hard drive, and shared network drives.  He did not use search terms, but instead, relied upon his knowledge of the contracts and where they were stored on the computer, and he reviewed each contract for responsiveness.  The Contract Specialist did not locate any responsive documentation. ***Pineiro Decl. at ¶¶ 30-31.***

25.     In October 2015, after review of the previously tasked search and the notification that no responsive records were located, the ICE FOIA Office forwarded the Request to OAQ a second time and instructed the search for responsive materials be conducted a second time.  The FOIA Point of Contact determined that an additional search should be conducted and that search was tasked to Contract Specialist. ***Pineiro Decl. at ¶ 31.***

26.     On October 27, 2015, the Contract Specialist searched paper files, and the government computer, including their hard drive, and shared network drives, using the following search terms: "Karnes County," "Civil Detention," "Expansion," "Site plan," and "Expansion layout."  The Contract Specialist located responsive documentation, which was provided to ICE FOIA on October 27, 2015. ***Pineiro Decl. at ¶ 31***.

## ICE OFFICE OF DETENTION POLICY AND PLANNING ("ODPP")

27.     ODPP is charged with designing a detention system that meets the unique needs of ICE's detained population. ***Pineiro Decl. at ¶ 22***.

28.     On April 22, 2015, the ICE FOIA Office forwarded the Request to ODPP instructing ODPP to search for and provide the ICE FOIA Office with all documentation concerning the Request. ***Pineiro Decl. at ¶ 32.***

29. The FOIA Point of Contact for ODPP received the FOIA request and reviewed the substance of the request; and based on her experience and knowledge of ODPP's practices and activities, responded on October 29, 2015, indicating that ODPP did not possess any records, and therefore a search would not be reasonably calculated to uncover any relevant documents. *Pineiro Decl. at ¶ 32.*

## ICE OFFICE OF PROFESSIONAL RESPONSIBILITY ("OPR")

30. Among other things, OPR is responsible for investigating allegations of employee misconduct impartially, independently, and thoroughly. OPR prepares comprehensive reports of investigation for judicial or management action. *Pineiro Decl. at ¶ 33*.

31. OPR was not tasked to conduct a search after receipt of the initial FOIA request. *Pineiro Decl. at ¶ 33*.

32. After receiving the District Court Complaint and upon a litigation review of the materials located in the searches, on December 2, 2015, the ICE FOIA Office forwarded the Request to OPR, instructing OPR to search for and provide the ICE FOIA Office with all documentation concerning the request. *Pineiro Decl. at ¶ 33-34.*.

33. On December 9, 2015, the OPR Point of Contact reported that OPR did not possess any records. *Pineiro Decl. at ¶ 34*.

## IV. PRODUCTION OF RESPONSIVE MATERIALS

34. In November 2015, the ICE FOIA Office forwarded materials received from the program office Points of Contact to a FOIA Litigation team for processing. *Pineiro Decl. at ¶¶ 35-36.*

35. On December 17, 2015, the ICE FOIA Office produced 25 pages of materials in response to Plaintiff's FOIA request; the release included sixteen pages that were partially withheld based on FOIA Exemptions 4, 6, 7(C), and 7(E). *Pineiro Decl. at ¶¶ 38-39.*

36.     On June 10, 2016, after conducting a voluntarily re-evaluation of its December 17 Release, the ICE FOIA Office made a supplemental release of four pages of materials that released previously withheld information.  *Pineiro Decl. at ¶ 39.*

## V.     THE PARTIES' NARROWING OF THE ISSUES BEFORE THE COURT

37.     On February 22, 2016, the Court entered a Minute Order granting the parties' proposed briefing schedule and memorializing the parties' agreement that Plaintiff would provide information to Defendant regarding its objections to the December 17 Production.  More specifically, the Court's Minute Order stated: "Plaintiff shall provide Defendant information concerning all challenges to Defendant's FOIA production by no later than February 26, 2016."

38.     On February 26, 2016,Plaintiff provided Defendant with a letter identifying its challenges to Defendant's FOIA production ("February 26 Letter").  The February 26 Letter stated that Plaintiff was challenging the adequacy of the search "based on the [size of] the production to date", noting that "[t]his position is based primarily on the absence of any records other than the Voluntary Work Program policy responsive to Plaintiff's request."  *See Exhibit 5 at p. 1 (RACIES Letter to Defendant, dated 2/26/2016).See Exhibit 5 (RACIES Letter to Defendant, dated 2/26/2016); Court's Minute Order of 2/22/2016.*

39.     Plaintiff's letter also requested more specific information responding to the questions of (i) which specific ERO offices were searched; (ii) whether the searches were conducted by individuals knowledgeable about the manner in which records were kept; (iii) whether three specific locations that it believed would have responsive documents were searched and why or why not; and (iv) why their assumption that ICE had reviewed and retained copies of all policies governing the Karnes facility was inaccurate.  *See Exhibit 5 at pp. 1-2 (RACIES Letter to Defendant, dated 2/26/2016)*

10

40.   Plaintiff's February 26 Letter did not identify any challenges to Defendant's withholdings made under FOIA Exemption 6 or 7(C); and it limited the challenged withholdings to the following:

- Page 3 – b7E x2
- Page 4 – b4 x3; b7E x2
- Page 9 – b4
- Page 10 – b4 x3; b7E
- Pages 11-12 – b7E
- Page 16-25 – b7E

*See* **Exhibit 5 at p. 2** *(RACIES Letter to Defendant, dated 2/26/2016).*

41.   On April 10, 2016, Defendant provided a letter addressing in detail each of Plaintiff's challenges to the December 17 Production.  *See* **Exhibit 6 at p. 2** *(ICE's Letter to Plaintiff Addressing FOIA Challenges, dated 4/10/2016).*

Dated:  June 29, 2016

                                                   Respectfully Submitted,

                                                   CHANNING D. PHILLIPS, D.C. BAR No. 415793
                                                   United States Attorney

                                                   Daniel F. VanHorn, D.C. Bar No. 924092
                                                   Chief, Civil Division

                                                   By:  */s/ April Denise Seabrook*
                                                   April Denise Seabrook, D.C. Bar No. 993730
                                                   Assistant United Defendants Attorney

                                                   Counsel for Defendant

**TABLE OF EXHIBITS**

| DESCRIPTION | EXH. |
|---|---|
| **Declaration of F. Pineiro** | 1 |
| Plaintiff's FOIA Request Letter<br>      dated 4/21/2015 | 2 |
| Email regarding receipt of FOIA Request, and denial of fee waiver request<br>      dated 4/22/2015 | 3 |
| ICE's FOIA Determination Letter<br>      dated 12/17/2015 | 4 |
| RAICES Letter to Defendant re: Challenges to FOIA Production of December 2015<br>      dated 2/26/2016 | 5 |
| ICE Letter to Plaintiff re: Response To Challenges<br>      dated 4/10/2016 | 6 |
| ICE's <u>Vaughn</u> Index | 7 |