UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAICES, INC., | \| |
| | \| |
| **Plaintiff,** | \| |
| | \| |
| v. | \|    Civil Action No. 15-1318 (JEB) |
| | \| |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | \| |
| | \| |
| **Defendant.** | \| |
| | \| |

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND AND FACTS ................................................................................. 1

ARGUMENT ............................................................................................................. 1

I.      LEGAL STANDARDS ................................................................................. 1

    A.      Rule 56 – Summary Judgment .......................................................... 1

    B.      Summary Judgment Standard in FOIA Cases ................................... 2

II.     STATE DEPARTMENT HAS CONDUCTED AN ADEQUATE SEARCH ................. 3

    A.      Legal Requirements of Search ........................................................... 3

    B.      Defendant Conducted A Reasonable Search ..................................... 5

III.    ICE HAS RELEASED ALL NON-EXEMPT PORTIONS OF RECORDS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST ...................................... 7

    A.      Legal Requirements Related To FOIA Exemptions .......................... 8

    B.      FOIA Exemption 4 ............................................................................ 9

        (1)     Protections Provided By FOIA Exemption 4 ......................... 9

        (2)     Defendant Has Properly Asserted Exemption 4 To Protect Confidential Commercial Information ..................................... 10

    C.      FOIA Exemption 7(E) ...................................................................... 12

        (1)     Threshold Requirements For Application Of Exemption 7 ..... 12

        (2)     Protections Provided By Exemption 7(E) ............................... 13

        (3)     Defendant Has Properly Asserted Exemption 7(E) To Protect Law Enforcement Documents .................................... 14

IV.     ICE HAS RELEASED ALL REASONABLY SEGREGABLE INFORMATION ........ 15

CONCLUSION .......................................................................................................... 16

## INTRODUCTION

Defendant U.S. Immigration and Customs Enforcement ("ICE" or the "Defendant"), a component agency of the U.S. Department of Homeland Security, by and through undersigned counsel, files this Memorandum of Points and Authorities in support of its Motion for Summary Judgment.  Defendant is entitled to judgment as a matter of law because, in response to Plaintiff Refugee and Immigrant Center for Education and Legal Services ("RAICES") request for information made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Defendant has (1) conducted a reasonable search to locate records responsive to Plaintiff's FOIA request; (2) produced all non-exempt portions of records responsive to Plaintiff's FOIA request; and (3) properly withheld information pursuant to the statutory exemptions.

## BACKGROUND AND FACTS

Defendant hereby incorporates as though fully set forth herein the accompanying Statement of Material Facts Not in Genuine Dispute and the exhibits thereto, including the following documents:

- **Declaration of Fernando Pineiro**, Deputy FOIA Officer of U.S. Immigration and Customs Enforcement's Freedom of Information Act Office (hereinafter, "Pineiro Decl."), attached as Exhibit 1 to Defendant's Statement of Material Facts Not In Genuine Dispute ("SOMF"); and

- **Defendant's *Vaughn* Index**, attached as Exhibit 7 to Defendant's SOMF.

## ARGUMENT

### I.      LEGAL STANDARDS

#### A.      Rule 56 – Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 248.  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986).

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact."  Anderson, 477 U.S. 242, 247-48 (emphasis in original).  The moving party may discharge this burden by "'showing' – that is point out to the [Court] – that there is an absence of evidence to support the non-moving party's case."  Sweats Fashion, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987); see also Celotex, 477 U.S. at 332.  Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, and must establish more than "the mere existence of a scintilla of evidence" in support of its position.  Anderson, 477 U.S. at 252.  Summary judgment is thus due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]."  Id.

**B.      Summary Judgment Standard in FOIA Cases**

"The Freedom of Information Act, 5 U.S.C. § 552(a), provides that '[e]ach agency shall make available to the public' records in its possession unless the information is covered by one of Section 552(b)'s nine statutory exemptions."  Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency, 678 F.3d 926, 931 (D.C. Cir. 2012); see 5 U.S.C. § 552(b).  The "vast majority" of FOIA cases are decided on motions for summary judgment.  See Brayton v. Office of U.S. Trade Rep., 641

F.3d 521, 527 (D.C. Cir. 2011); Media Research Ctr. v. U.S. Dep't of Justice, 818 F. Supp. 2d 131, 136 (D. D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor, 478 F. Supp. 2d 77, 80 (D. D.C. 2007) ("CREW").  An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure.  See Weisberg v. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations.  See McGehee v. C.I.A., 697 F.2d 1095, 1102 (D.C. Cir. 1983); Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert denied, 415 U.S. 977 (1974).

"[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  CREW, 478 F. Supp. 2d at 80 (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  Media Research Ctr., 818 F. Supp. 2d at 137 (quoting Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## II.     STATE DEPARTMENT HAS CONDUCTED AN ADEQUATE SEARCH

### A.     Legal Requirements of Search

An agency's search for records in the context of a FOIA case is adequate if it was "reasonably calculated to uncover all relevant documents."  Valencia-Lucena v. U.S. Coast

3

Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks omitted); Campbell v. Dep't of Justice, 164 F.3d 20, 27-28 (D.C. Cir. 1998).  The agency must explain the "scope and method of the search [in] reasonable detail[,]" but need not provide "meticulous documentation [of] the details of an epic search."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  Rather, the agency must show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  "There is no requirement that an agency search every record system."  Id.  Specifically, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890, 892 n.7 (D.C. Cir. 1995) (holding that agency need only make "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested").  A search is not inadequate merely because it failed to "uncover[] every document extant," SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991).  In short, a search's adequacy is measured by the methods employed, not by the results obtained.  Weisberg, 745 F.2d at 1485.

    An agency can establish that it has performed a good faith search by submitting a declaration specifying the search terms used and type of search performed, and averring that all files likely to contain responsive records were searched.  Stephens v. Dep't of Justice, --- F. Supp. 2d ---, 2014 WL 1015803, at *3 (D. D.C. March 18, 2014) (citing Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)); Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973).  Courts accord agency affidavits "a presumption of good faith, which cannot be rebutted

4

by 'purely speculative claims about the existence and discoverability of other documents.'"
SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer
Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).  In addition, "[r]easonableness does not
demand perfection, and a reasonable search need not uncover every document in existence."
Kaminsky Nat'l Aeronautics & Space Administration, No. 08-cv-3313, 2010 WL 276184 at *5
(E.D.N.Y. Jan. 19, 2010) (internal citations omitted).  Here, the Declaration of Fernando Pineiro
demonstrates that ICE has more than satisfied this standard in connection with Plaintiff's FOIA
request.

### B.  Defendant Conducted A Reasonable Search

As described in detail by the Pineiro Declaration, ICE has more than satisfied its
obligations under the FOIA.  Plaintiff's only "evidence" that ICE's search was inadequate is that
Defendant did not produce a large number of documents in response to the FOIA Request.  *See
SOMF at ¶¶ 38-39; Exh. 5 (Plf's February 26, 2016 Letter).*  Plaintiff's argument is without
merit because, as noted above, a search's adequacy is measured by the methods employed, not
by the results obtained.  Weisberg, 745 F.2d at 1485.  Here, as detailed in the Pineiro
Declaration, the searches for responsive records were conducted in four ICE program offices that
were selected based on the description of the records requested and the ICE FOIA Office's
familiarity with the holdings of ICE's records systems, applicable records disposition schedules,
and the substantive and functional mandates of ICE's numerous program offices.  *Pineiro Decl.
¶¶ 11, 19.*  Within each program office tasked with the search, a Point of Contact evaluated the
FOIA request and, based upon a combination of case-specific instructions and his experience and
knowledge of their program office's practices and activities, the Point of Contact tasked specific
individuals with conducting searches to locate responsive materials.  *Pineiro Decl. ¶¶ 12-13, 25-
26, 28, 30-34.*  For each search, the individual who conducted the searches had information and

instructions regarding the FOIA request as well as personal knowledge of the functional roles of the program office, the records systems used by the program office, and how to search those record systems. *Pineiro Decl. ¶ 13-14, 24-28, 31-32, 34, 36.*

Additionally, as further described in the Pineiro Declaration, within each office the search was conducted using terms and methods reasonably calculated to locate responsive materials.  As a reminder, Plaintiff's FOIA request was very narrowly tailored.  It only requested materials related to the Karnes Facility laundry room and, in particular materials related to (1) blueprints and schematics of the laundry room; (2) "[p]olicies and procedures related to the laundry room"; and (3) "[p]olicies and procedures related to security monitoring of the laundry room."  See Exhibit 2 (Plf's FOIA Request).  The searches conducted by ICE reflect the use of methods and search terms that were sufficiently broad to locate the responsive documents.  For example, the first searches of the ERO San Antonio Field Office included *(i)* a search of the Assistant Field Office Director's government computer, including the hard drive and the ERO shared network drives, using the search terms "policy," "laundry," and "voluntary worker"; and *(ii)* a search conducted by a Special Assistant to the Assistant Field Office Director that consisted of a review of paper files, her government computer, including her hard drive and the ERO shared network drives, and her Microsoft Outlook e-mail account, using the search terms "Karnes blueprints," "KCRC blueprints," "Karnes schematics," "KCRC schematics," and "Karnes."  *Pineiro Decl. ¶ 27.*  Notably, after receiving the result of the searches, ERO re-tasked the San Antonio Field Office with the FOIA request and yet another search was conducted; this time by a Management and Program Analyst who reviewed paper files related to GEO Group.  *Pineiro Decl. ¶ 29.* Similarly, as the Pineiro Declaration also details, the searches of the other program offices were conducted in a manner – and by an individual – reasonably likely to locate responsive materials,

if any existed.  *See Pineiro Decl. ¶¶ 30-31 (detailing search of QAQ); ¶ 32 (detailing search of ODPP); ¶¶ 33-34 (detailing search of OPR).*

The detailed description of the offices searched, the databases searched, the terms used during electronic searches, and the searches of paper files provide more than adequate detail to demonstrate that ICE has satisfied its FOIA obligations and satisfied the standard set forth in Oglesby; thus, Defendant is entitled to summary judgment on Plaintiff's claim regarding the adequacy of the search.

**III.  ICE HAS RELEASED ALL NON-EXEMPT PORTIONS OF RECORDS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST**

As previously noted, Defendant conducted several searches for responsive records and produced materials in December 2015, withholding portions of some pages under FOIA Exemptions 4, 6, 7(C), and 7(E).  On February 26, 2016, in response to the Court's February 22 Minute Order memorializing the parties' agreement that "Plaintiff shall provide Defendant information concerning all challenges to Defendant's FOIA production", Plaintiff's counsel provided a letter to Defendant's counsel identifying challenges to adequacy of the search conducted and to certain withholdings.  See SOMF ¶¶ 37-38.

Plaintiff's letter did not contain any challenge to a withholding made pursuant to FOIA Exemption 6 or 7 (C) and, thus, Plaintiff has waived those objections.[1]  Further, Plaintiff's objections to Defendant's withholdings were limited to the following challenges:

- Exemption 4 withholdings on pages 3, 4, 9, 10, 11-12, 16-25.
- Exemption 7(E) withholdings on pages 3, 4, 9, 10, 11-12, and 16-25.

*See Exhibit 5 at p. 2 (RAICES Letter to Defendant, dated 2/26/2016).*  On June 9, 2016, after a re-review of the materials produced, Defendant made a supplemental production that consisted

---

[1] Because Plaintiff has not identified any objections to Defendant's withholdings under Exemption 6 and 7(C), those exemptions are not addressed in this motion.

of a re-release of pages 3, 4, 9, and 10.  This production makes many of the challenges listed in

the February 26 Letter moot, because Defendant released the previously withheld information.

More specifically, after Defendant's June 2016 production, the only remaining challenges to

Defendant's FOIA withholdings are:

- Page 4: contains only one withholdings under Exemption 4
- Page 9: contains one withholding under Exemption 4
- Page 10: contains revised Exemption 4 withholdings[2]
- Pages 11-12:  one withholding on each page under Exemption 7(E)
- Pages 16-25:  one withholding on each page under Exemption 7(E)

As an initial matter, it is noteworthy that **_none_** of the information that has been withheld under

Exemption 4 or Exemption 7(E) – either before or after Defendant's supplement release – is

actually responsive to Plaintiff's FOIA request, which only asked for information related to the

laundry room at the Karnes facility.  Regardless, each of these withholdings is discussed below.

### A.    Legal Requirements Related To FOIA Exemptions

Under the FOIA, if a record contains information exempt from disclosure, any

"reasonably segregable," non-exempt information must be disclosed after redaction of the

exempt information.  5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed

if they are "inextricably intertwined with exempt portions."  Mead Data Cent., Inc. v. Dep't of

the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable,

non-exempt information has been disclosed, an agency need only show "with 'reasonable

specificity'" that the information it has withheld cannot be further segregated.  Armstrong v.

Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996); Canning v. Dep't of

Justice, 567 F. Supp. 2d 104, 110 (D. D.C. 2008).  "Agencies are entitled to a presumption that

---

[2] In Defendant's April 10, 2016 letter, Defendant clarified that the one challenged 7(E) withholding on page 10 of the production was mislabeled.  The information was withheld under Exemption 4; there were no withholdings under Exemption 7(E) on page 10 of the December 17 Production.  The supplemental production of June 2015 reflected the correction.

they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).  Furthermore, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  CREW, 478 F. Supp. 2d at 80 (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)).  In the instant litigation, the State Department's declaration, exhibits and Vaughn Index demonstrate that the agency has provided all non-exempt responsive records to Plaintiff and properly withheld information, pursuant to the statutory exemptions.

### B.    FOIA Exemption 4

#### (1)    Protections Provided By FOIA Exemption 4

Exemption 4 of the FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).  Information is "commercial" if, "in and of itself," it serves a "commercial function" or is of a "commercial nature."  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 38 (D.C. Cir. 2002) (internal citations omitted).  Indeed, records are "commercial" as long as the submitter has a "commercial interest" in them.  Gilda Industries Inc. v. U.S. Customs & Border Protection Bureau, 457 F.Supp. 2d 6, 9 (D.D.C. 1983) (citing Pub. Citizen Health Group, 704 F.2d at 1290); see also Washington Post v. U.S. Dep't of Heath and Human Serv., 690 F.2d 252, 266 (D.C. Cir. 1982).

"[C]ommercial or financial matter is 'confidential' for purposes of [Exemption (b)(4)] if disclosure of the information is likely to have either of the following effects: (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial

harm to the competitive position of the person from whom the information was obtained."  Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974) (concluding that the legislative history of the FOIA  "firmly supports an inference that [Exemption 4] is intended for the benefit of persons who supply information as well as the agencies which collect it").  Moreover, "the court need not conduct a sophisticated economic analysis of the likely effects of disclosure" in order to find a likelihood of substantial commercial harm.  Pub. Citizen Health Group, 704 F.2d at 1291 (citing Nat'l Parks, 547 F.2d at 681).  "To meet this standard, [it] is not required to prove that substantial harm is 'certain' to result from disclosure, but only that such harm is 'likely.'"  Boeing Co. v. U.S. Dep't of Air Force, 616 F.Supp.2d 40, 45 (D.D.C. 2009) (citing McDonnell Douglas Corp. v. U.S. Dep't of the Air Force, 375 F.3d 1182, 1187 (D.C. Cir. 2004)).  "When determining whether Exemption 4 applies, actual harm does not need to be demonstrated; evidence supporting the existence of potential competitive injury or economic harm is enough for the exemption to apply."  Essex Electro Engineers v. Secr'y of the Army, 686 F. Supp. 2d 91, 94 (D.D.C. 2010) (upholding the Army's application of Exemption (b)(4) to withhold unit prices in a contract award, stating that "releasing the withheld information would cause substantial competitive harm because the requested information could reveal [a third party's] business strategy and cost structure.")

### (2)   Defendant Has Properly Asserted Exemption 4 To Protect Confidential Commercial Information

Plaintiff has only challenged Defendant's Exemption 4 withholding on three pages of the production, specifically, pages 4, 9, and 10.  The withheld information consists of (1) bed-day rates and similar pricing information, as well as certain other amounts charged under the contracts; (2) the amount paid per day for job assignments; (3) the amount paid per day per pupil for educational services; (4) the hourly overtime guard rate per officer; (5) the amount paid per

sack lunches; (6) the monthly rate for resident housing; and (7) the monthly rate for transportation services.  *Pineiro Decl. ¶¶ 43-45.*

As discussed below, the information redacted under Exemption 4, if revealed, would likely cause substantial harm to the contracting company's competitive position by, *inter alia*, allowing the company's competitors to identify the terms and conditions of the company's contract with the government.  *Pineiro Decl. ¶¶ 44-45.*  Detention facility contracts are subject to intense competition among private contractors, and these contractors compete on these contracts largely based on price where very small margins separate winning and losing bids.  Such information could enable competitors to utilize the contractor's information in the future in underbidding the current contract.  *Pineiro Decl. ¶ 44.*

Release of this information would allow the company's competitors to identify the company's terms and conditions of its contract with the government, which is likely to cause substantial harm to the company's competitive position.  *Pineiro Decl. ¶ 44.*  For example, because ICE has disclosed the total amount to be paid under the contract, the disclosure of the number of beds could be used to determine the specific bed-day rate that the contractor charged ICE under the contract.  The bed-day rate represents the per-detainee cost that ICE uses when comparing private contractors' bids.  *Pineiro Decl. ¶¶ 44-45.*  This information falls within the protections of Exemption 4.  See Timken Co. v. U.S. Custom Serv., 491 F. Supp, 557, 559-560 (D.D.C. 1980) (upholding Exemption 4 claim applied to information about prices because "even if the price data would be insufficient standing by itself, to allow computation of the costs of production, this cost would be ascertainable when coupled with other information either possessed by plaintiff or sought by plaintiff in other pending FOIA actions).

C.      **FOIA Exemption 7(E)**

(1) **Threshold Requirements For Application Of Exemption 7**

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause one of the six harms enumerated in § 552(b)(7).  5 U.S.C. § 552(b)(7); see Concepcion v. FBI, 606 F. Supp. 2d 14, 36 (D. D.C. 2009) (Under Exemption 7, "an agency must establish that the records in issue were compiled for law enforcement purposes, and that the material satisfies one of the subparts of Exemption 7.") (citing Pratt v. Webster, 673 F.2d 408, 413 (D.C. Cir. 1982)).  Before an agency can receive protection from disclosure by invoking a harm enumerated in Exemption 7, it must first demonstrate that the record or information at issue was compiled for law enforcement purposes.

This Circuit has repeatedly held that in order to satisfy this threshold requirement, law enforcement agencies need only show that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of the agency. Keys v. Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) ("[A] criminal law enforcement agency's invocation of 'law enforcement purposes' warrants greater deference than do like claims by other agencies.") (citing Pratt, 673 F.2d at 420-21); Blackwell, 646 F.3d at 40 (only a "rational nexus" between criminal law enforcement agency's duties and the withheld item need be shown).  An agency need not link its collection of material to a specific or ongoing investigation. See, e.g., Tax Analysts v. IRS, 294 F.3d 71, 78 (D.C. Cir. 2002).

The information for which ICE asserts Exemption 7 satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions.  *See* 8

12

U.S.C. § 1103.  *Pineiro Decl. ¶ 47.*  ICE is the largest investigative arm of DHS and the second

largest investigative agency in the federal government.  *Id.*  The program offices within ICE that

were tasked with conducting searches all perform significant law enforcement-related functions

to assist ICE in its overall mission:

- ICE ERO conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States. Within ICE, ERO has broad authority and prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, recent border entrants, and aliens who thwart immigration control. *Pineiro Decl. ¶¶ 20, 48.*

- ICE OAQ delivers quality acquisition solutions in support of the ICE and DHS missions, which includes providing oversight and support to ICE acquisition programs in the planning, awarding, and administering contracts related to ICE's law enforcement mission. *Pineiro Decl. ¶ 21.*

- ICE ODDP provides support to ICE detention facilities and assists with the designing of detention systems that meet the unique needs of ICE's detained population. *Pineiro Decl. ¶ 22.*

- ICE OPR prepares comprehensive reports of investigation for judicial or management action.  OPR inspects and reviews ICE offices, operations and processes in order to provide executive management with an independent review of the agency's organizational health and assess the effectiveness and efficiency of the overall ICE mission. *Pineiro Decl. ¶ 33.*

The ICE information at issue in this case was compiled by ICE because it relates to ICE's

obligation to enforce the immigration laws of the United States and, in particular, ICE's

operation of a secure detention facility housing potentially removable illegal aliens.  *Pineiro*

*Decl. ¶ 49.*  Therefore, because the materials are necessarily compiled in the course of

performing law enforcement duties, all the ICE records responsive to Plaintiff's FOIA request

meet the threshold requirement of FOIA Exemption 7.

## (2)    Protections Provided By Exemption 7(E)

Exemption 7(E) permits withholding of "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records

or information … would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); <u>Blackwell v. F.B.I.</u>, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'"  <u>Blackwell</u>, 646 F.3d  at 42 (quoting <u>Mayer Brown LLP v. IRS</u>, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).  In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"  <u>Id.</u> (quoting <u>Mayer Brown</u>, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

### (3)     Defendant Has Properly Asserted Exemption 7(E) To Protect Law Enforcement Documents

Plaintiff has only challenged Defendant's Exemption 7(E) withholdings on twelve pages, specifically pages 11-12 and 16-25.  The withheld information consists of (i) a law enforcement code for the specific page of the facility plan; and (ii) the detailed layout and blueprints of the Karnes detention facility.  This information falls squarely within the protections of Exemption 7(E), because disclosure of these details about a secure detention facility would reveal techniques and procedures of law enforcement and could reasonably be expected to risk circumvention of the law by, for example, allowing a person to know where a detention facility would be most

14

vulnerable to efforts to avoid detection and apprehension when organizing an escape or disturbance and would allow them to frustrate or thwart such measures.  See, e.g., Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec., 738 F. Supp. 2d 93, 119 (D.D.C. 2010) (upholding ICE's application of Exemption 7(E) to withhold information related to detention facilities, because its release would "provide insight into ICE's security measures, which could circumvent those measures and compromise the safety of detainees and employees at its detention facilities where its detainees are housed").

## IV.    ICE HAS RELEASED ALL REASONABLY SEGREGABLE INFORMATION

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  Although the agency "must provide a 'detailed justification' for its non-segregability," it "is not required to provide so much detail that the exempt material would be effectively disclosed."  Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting Mead Data, 566 F.2d at 261).  All that is required is that the government show "with reasonable specificity" why a document cannot be further segregated.  Armstrong v. Exec. Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996) (internal citations omitted); see Beltranena v. U.S. Dep't of State, 821 F. Supp.2d 167 (2011) (upholding redactions under Exemption 3 where the declarant provides that the withheld information contained "no information that may be reasonably segregated and released, such as visa applications or other records that were previously in Plaintiff's possession.").  Moreover, the State Department is not required to "commit significant time and resources to the separation of

disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

Here, the Agency has declared that it reviewed each record line-by-line to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied to ensure that all non-exempt information was released, and with respect to the records that were released in part, all information not exempted from disclosure pursuant to FOIA exemptions specified above was correctly segregated and non-exempt portions were released. Pineiro Decl. ¶ 68.  ICE's good faith in this regard is further evidenced by the fact that, in June 2016, it voluntarily conducted a re-review of the released documents and made a supplemental release of information previously withheld.  Pineiro Decl. ¶ 39.  All reasonably segregable information has been released and Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court grant summary judgment in its favor on all of Plaintiff's claims.

Dated:  June 29, 2016                     Respectfully Submitted,

                                          CHANNING D. PHILLIPS, D.C. BAR NO. 415793
                                          United States Attorney

                                          DANIEL F. VANHORN, D.C. Bar No. 924092
                                          Chief, Civil Division

                                 By: /s/ *April Denise Seabrook*
                                          APRIL DENISE SEABROOK, D.C. Bar No. 993730
                                          Assistant United States Attorney
                                          5554th Street NW,
                                          Washington, D.C. 20005
                                          Telephone: 202-252-2525
                                          April.Seabrook@usdoj.gov

                                          *Attorneys for Defendant*