# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **RAICES, INC.,** | |
| **Plaintiff,** | **Civil Action No. 15-1318 (JEB)** |
| **v.** | |
| **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,** | |
| **Defendant.** | |

**DECLARATION OF FERNANDO PINEIRO**
**IN SUPPORT OF UNITED STATES IMMIGRATION AND CUSTOMS**
**ENFORCEMENT'S MOTION FOR SUMMARY JUDGMENT**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Deputy Freedom of Information Act ("FOIA") Officer of the Freedom of Information Act Office ("ICE FOIA Office") at U.S. Immigration and Customs Enforcement ("ICE").  I have held this position since December 29, 2013.  Prior to this position, I was the FOIA Officer for the office for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS").

2.      The ICE FOIA Office is responsible for processing and responding to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE.  The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

3.      As the Deputy FOIA Officer of the ICE FOIA Office, my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office.  I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE.  In connection with

my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.  In that respect, I am familiar with ICE's processing of the FOIA request dated April 21, 2015 that Refugee and Immigrant Center for Education and Legal Services ("RAICES" or "Plaintiff") submitted to ICE that is the subject of this litigation.

4.       I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action.  The statements I make in this declaration are based on my personal knowledge, which includes knowledge acquired through, agency files reviewed, and information provided to me by other ICE employees in the course of my official duties.  The documents attached hereto are kept by ICE in the ordinary course of its business activities.

## I.       ADMINISTRATIVE PROCEDURAL HISTORY  OF PLAINTIFF'S FOIA REQUEST

5.       In a letter dated April 21, 2015, that was received by ICE on April 22, 2015, Plaintiff submitted a FOIA request to ICE FOIA (the "Request").  The request also contained a fee waiver request and a request for expedited processing.  *See Exhibit 2 to Defendant's Statement of Material Facts ("SOMF") – Plaintiff's FOIA Request.*

6.       By e-mail dated April 22, 2015, the ICE FOIA Office acknowledged receipt of the FOIA request and assigned it the ICE FOIA case number 2015-ICFO-78483.  In the e-mail, ICE FOIA denied Plaintiff's request for a fee waiver and Plaintiff's request for expedited processing.  *See Exhibit 3 to SOMF -- Email Exchange Between ICE FOIA and Plaintiff, dated 4/22/2015.*

7.       On August 14, 2015, Plaintiff filed a "Complaint For Declaratory and Injunctive Relief" (Doc. No. 1) and a "First Amended Complaint for Declaratory and Injunctive Relief" (Doc. No. 3) in the U.S. District Court for the District of Columbia.  Plaintiff's Complaint

alleged that the U.S. Immigration and Customs Enforcement failed to substantively respond to Plaintiff's FOIA request.  As a result of the intervening litigation, and , the ICE FOIA Office administratively closed Plaintiff's open FOIA request, in accordance with the ICE FOIA Office's standard operating procedures.

8.      On December 17, 2015, ICE mailed to Plaintiff twenty-five (25) pages of responsive records.  *See Exhibit 4 – FOIA Determination Letter, dated 12/17/2015.*

9.      On February 5, 2016, ICE filed its Answer to the Complaint with the Court.

10.     On June 9, 2016, after voluntarily conducting an additional review of the twenty-five (25) pages that were released to the Plaintiff on December 17, 2015, ICE re-released four (4) pages to the Plaintiff based on its determination that some information that was previously withheld pursuant to exemptions of the FOIA should be released to the Plaintiff.

## II.  INFORMATION REGARDING ICE'S STANDARD PROCEDURES FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

11.      When the ICE FOIA Office receives a FOIA request, its first step is to determine which program offices within ICE are reasonably likely to possess records responsive to that request, if any, and to initiate searches within those program offices.  This determination is based on the description of the records requested and requires a familiarity with the holdings of the Defendant's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous ICE offices.  Factors such as the nature, scope, and complexity of the request itself are also relevant.

12.     Each program office within ICE has a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office.  Each POC is a person with detailed knowledge about the operations of their particular program office.  Once the ICE FOIA Office determines the appropriate program

offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records.

13.     The POCs then review the FOIA request along with any case-specific instructions that may have been provided by the ICE FOIA Office, and based on the POC's experience and knowledge of their program office's practices and activities, forward the request and instructions to  individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any.

14.     Per the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents.  After those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to the ICE FOIA Office.  The ICE FOIA Office then reviews the collected records for responsiveness and appropriate withholdings.

15.     ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. Similarly, ICE employees maintain records in several ways, including storing electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, or USB storage devices.  The determination of whether or not these electronic locations need to be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

16.     Additionally, all ICE employees have access to email.  ICE uses the Microsoft

Outlook email system.  ICE employees use various methods to store their Microsoft Outlook

email files: some archive their files monthly, without separating by subject; others archive their

email by topic or by program; and still others may create PST files of their emails and store them

on their hard drive or shared drive.  Like other searches of emails, an employee will complete a

search of his email archive when he determines that the archive may contain potentially

responsive documents; this determination is based on his knowledge of the FOIA request, the

FOIA tasking and instructions provided to him by ICE FOIA and/or the program office POC,

and his knowledge of the method in which he stores his emails.

**III.    DESCRIPTION OF PLAINTIFF'S FOIA REQUEST AND PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO THE REQUEST**

17.     Plaintiff's Request stated, in relevant part, that:

> RAICES seeks information regarding the layout and security system of the laundry room at Kames County Residential Center ("Kames"). To this end, RAICES seeks disclosure of any and all records, including electronic documents and communications in the custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), The Geo Group, Inc. ("GEO"), and any other subcomponents or subcontractors (collectively the "DHS"), as described in the specific requests listed below….

> Specific Requests and Instructions

> 1.  Please provide the following physical and electronic records in regards to the laundry room at the Kames County Residential Center in Kames Cty, Texas.  Please provide the following information:

> a.  Blueprint of the laundry room;

> b.  Schematics of the laundry room …;

> c.  Policies and procedures related to the laundry room...; and

> d.  Policies and procedures related to security monitoring of the laundry room.

<u>*See</u> Exhibit 2 to SOMF - Plaintiff's FOIA Request.*

Declaration of Fernando Pineiro
*RAICES v. ICE*, Case No. 15-cv-1318 (JEB)

18.     ICE is the principal investigative arm of the DHS and the second largest investigative agency in the federal government.  Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries.

19.     On April 22, 2015, upon receipt and review of the Request, the ICE FOIA Office determined that because of the subject matter of the FOIA request, there were three (3) offices reasonably likely to have records responsive to Plaintiffs' request: the ICE Office of Enforcement and Removal Operations ("ERO"), the ICE Office of Acquisition Management ("OAQ"), and the ICE Office of Detention Policy and Planning ("ODPP").  The ICE FOIA Office instructed those specific offices to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing.

20.     ERO enforces the nation's immigration laws.  ERO identifies and apprehends removable aliens, detains these individuals when necessary, and removes illegal aliens from the United States.  ERO prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, and recent border entrants.  ERO transports removable aliens from point to point, manages aliens in custody or in an alternative to detention program, provides access to legal resources and representatives of advocacy groups, and removes individuals from the United States who have been ordered to be deported.  ERO comprises seven headquarters divisions and 24 Field Offices, and more than of 7,600 employees.

21.     OAQ delivers quality acquisition solutions in support of the ICE and DHS missions.[1]  OAQ includes the (*i*) Office of Component Acquisition Executive ("CAE"), which

---

[1] Acquisition management and solutions includes traditional contracting functions, requirements definition, assessment and oversight of contract performance, and technical and management direction.

Declaration of Fernando Pineiro
*RAICES v. ICE*, Case No. 15-cv-1318 (JEB)

provides acquisition management oversight and support to ICE acquisition programs, and (ii) Detention Compliance and Removals ("DCR"), which provides acquisition support to ICE Headquarters and Field Offices, and to ERO in the planning, awarding, and administering contracts for law enforcement and compliance requirements.

22.     ODPP leads ICE's efforts to improve the current immigration detention system, an effort which requires extensive collaboration and consultation with both internal and external stakeholders.  ODPP is charged with designing a detention system that meets the unique needs of ICE's detained population.  ODPP will shape the future design, location and standards for civil Immigration detention facilities so that ICE no longer relies primarily on existing penal models.

## IV.    ICE OFFICE OF ENFORCEMENT AND REMOVAL OPERATIONS ("ERO") SEARCH AND RESPONSE TO PLAINTIFF'S FOIA REQUEST

23.     When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to the ERO Information Disclosure Unit ("IDU").  Points of Contact ("POCs") in IDU review the substance of the request and based on their subject matter expertise and knowledge of the program offices' activities within ERO, IDU forwards the FOIA request to specific individuals and component offices within ERO to conduct searches of their file systems (including both paper files and electronic files) which in their judgment, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any.

24.     The employees exercise discretion, based on their operational knowledge and subject matter expertise, in choosing the specific search terms utilized to ascertain whether or not potentially responsive documentation exists.  Once searches are completed, the individuals and component offices provide any potentially responsive records to the IDU POC, who in turn

provides the records to the ICE FOIA Office.  The ICE FOIA Office then reviews the collected records for responsiveness and appropriate withholdings.

25.    On April 22, 2015, the ICE FOIA Office forwarded the Request to ERO instructing ERO to search for and provide the ICE FOIA Office with all documentation concerning the Request.  A POC in ERO IDU received and reviewed the request and, based on the contact's knowledge of the program offices' activities within ERO, IDU determined searches for potentially responsive records should be conducted at (i) ERO Headquarters Custody Management Division and (ii) the ERO San Antonio Field Office.

26.    On April 24, 2015, IDU tasked the ERO San Antonio Field Office to search for and provide the ICE FOIA Office with all documentation concerning the Request.  The FOIA POC in the San Antonio Field Office reviewed the substance of the request and, based on their experience and knowledge of their office's practices and activities, tasked an Assistant Field Office Director ("AFOD") and a Special Assistant to the AFOD to search for potentially responsive documentation.

27.    On September 3, 2015, the AFOD searched their government computer, including their hard drive and shared network drives, using the following search terms: "policy," "laundry," and "voluntary worker."  On September 3, 2015, the Special Assistant to the AFOD, searched her paper files, her government computer, including her hard drive, shared network drives, and her Microsoft Outlook e-mail account, using the following search terms: "Karnes blueprints," "KCRC blueprints," "Karnes schematics," "KCRC schematics," and "Karnes."  The AFOD and the Special Assistant to the AFOD located potentially responsive documentation, which was provided to ICE FOIA on September 3, 2015.  The ICE FOIA Office reviewed the

documentation and released responsive, non-exempt portions of the documentation to Plaintiff on December 17, 2015.

28.     After receiving the Complaint, and upon a litigation review of the case, on September 24, 2015, IDU tasked the ERO Headquarters Custody Management Division to search for and provide the ICE FOIA Office with all documentation concerning the Request.  Custody Management provides policy and oversight for the administrative custody of one of the most highly transient and diverse populations of any or detention system in the world.  Custody Management manages ICE detention operations efficiently and effectively to provide for the safety, security, and care of aliens in ERO custody.  The FOIA POC for Custody Management received the FOIA request and reviewed the substance of the request; and based on her experience and knowledge of Custody Management's practices and activities, responded on October 6, 2015, indicating that Custody Management did not possess any records, and therefore a search would not be reasonably calculated to uncover any relevant documents.

29.     Upon a litigation review, on November 6, 2015, IDU tasked the ERO San Antonio Field Office a second time to search for and provide the ICE FOIA Office with all documentation concerning the Request.  The FOIA POC in the San Antonio Field Office reviewed the substance of the request and, based on their experience and knowledge of their office's practices and activities further tasked a Management and Program Analyst to search for potentially responsive documentation.  The Management and Program Analyst conducted a search of paper files, specifically, paper files on her bookshelf which are organized by contractor name.  The Management and Program Analyst searched the paper files for the contractor "GEO Group" and located responsive documentation, which was provided to ICE FOIA on October 7,

2015.  The ICE FOIA Office reviewed the documentation and released responsive, non-exempt

portions of the documentation to Plaintiff on December 17, 2015.

**V.      ICE OFFICE OF ACQUISITION MANAGEMENT ("OAQ") SEARCH AND RESPONSE TO PLAINTIFF'S FOIA REQUEST**

30.     On April 22, 2015, the ICE FOIA Office forwarded the Request to OAQ

instructing OAQ to search for and provide the ICE FOIA Office with all documentation

concerning the Request.  The FOIA POC for OAQ received the FOIA request and reviewed the

substance of the request; and based on experience and knowledge of OAQ's practices and

activities, tasked a Contract Specialist to conduct a search for responsive documents.  On April

22, 2015, the Contract Specialist searched their government computer, including their hard drive,

and shared network drives.  He did not use search terms, but instead, relied upon his knowledge

of the contracts and where they were stored on the computer, and he reviewed each contract for

responsiveness.  The Contract Specialist did not locate any responsive documentation.

31.     Upon a litigation review, on October 23, 2015, the ICE FOIA Office forwarded

the Request to OAQ a second time, instructing OAQ to search for and provide the ICE FOIA

Office with all documentation concerning the Request.  The FOIA POC for OAQ received the

FOIA request and reviewed the substance of the request; and based on experience and

knowledge of OAQ's practices and activities, tasked a Contract Specialist to conduct a search for

responsive documents.  On October 27, 2015, the Contract Specialist searched paper files, and

their government computer, including their hard drive, and shared network drives, using the

following search terms: "Karnes County," "Civil Detention," "Expansion," "Site plan," and

"Expansion layout."  The Contract Specialist located responsive documentation, which was

provided to ICE FOIA on October 27, 2015, and was released to Plaintiff on December 17, 2015.

## VI.     ICE OFFICE OF DETENTION POLICY AND PLANNING ("ODPP") SEARCH AND RESPONSE TO PLAINTIFF'S FOIA REQUEST

32.     On April 22, 2015, the ICE FOIA Office forwarded the Request to ODPP instructing ODPP to search for and provide the ICE FOIA Office with all documentation concerning the Request.  The FOIA POC for ODPP received the FOIA request and reviewed the substance of the request; and based on her experience and knowledge of ODPP's practices and activities, responded on October 29, 2015, indicating that ODPP did not possess any records, and therefore a search would not be reasonably calculated to uncover any relevant documents.

## VII.    ICE OFFICE OF PROFESIONAL RESPONSIBILITY ("OPR") SEARCH AND RESPONSE TO PLAINTIFF'S FOIA REQUEST

33.     The Office of Professional Responsibility ("OPR") is responsible for investigating allegations of employee misconduct impartially, independently, and thoroughly.  OPR prepares comprehensive reports of investigation for judicial or management action.  OPR inspects and reviews ICE offices, operations and processes in order to provide executive management with an independent review of the agency's organizational health and assess the effectiveness and efficiency of the overall ICE mission.  Additionally, OPR screens potential ICE employees for character and suitability.

34.     OPR was not tasked after receipt of the initial FOIA request, however, after receiving the Complaint and upon a litigation review in the instant case, on December 2, 2015, the ICE FOIA Office forwarded the Request to OPR, instructing OPR to search for and provide the ICE FOIA Office with all documentation concerning the Request.  The FOIA POC for OPR received the FOIA request and reviewed the substance of the request; and based on her experience and knowledge of OPR's practices and activities, responded on December 9, 2015, indicating that OPR did not possess any records, and therefore a search would not be reasonably calculated to uncover any relevant documents.

## VIII.   <u>ICE FOIA'S COMPLETED PRODUCTIONS</u>

35.     In November 2015, the ICE FOIA Office began processing the records received from the program offices tasked to conduct searches.

36.     When records received by the ICE FOIA Office from a FOIA POC for a program office pertain to active litigations, the records are assigned to the FOIA Litigation team for processing.  The FOIA processor assigned reviews the records to determine whether information is responsive and whether information should be withheld pursuant to the FOIA or the Privacy Act while being certain that all reasonably segregated non-exempt information is released. Frequently the ICE FOIA office must coordinate between multiple program offices when reviewing records to ensure exemptions are properly applied and information correctly segregated.

37.     On December 2, 2015, in accordance with Executive Order 12600 and U.S. Department of Homeland Security's FOIA regulations found at 6 C.F.R. § 5.8, the ICE FOIA Office provided a submitter notice to the private contractor whose information was contained in the responsive records (*i.e.*, GEO Group, Inc.) to inform them that Plaintiff's FOIA request sought business information that they had provided to ICE.  The private contractor provided its submitter notice response on December 11, 2015.

38.     On December 17, 2015, the ICE FOIA Office produced twenty-five (25) pages of records to Plaintiff.  As discussed below, sixteen (16) of these pages were partially withheld pursuant to the application of FOIA exemptions.

39.     Upon preparation of the *Vaughn* Index for this case, ICE voluntarily conducted a supplemental review of the twenty-five (25) pages that were released to the Plaintiff on December 17, 2015.  Based upon this review, ICE re-released four (4) pages to the Plaintiff on

June 10, 2016, as a result of its determination that some information previously withheld
pursuant to exemptions of the FOIA should be released to the Plaintiff.

## IX.    THE *VAUGHN* INDEX

40.    Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.
Cir. 1973), a *Vaughn* index accompanies this declaration; the *Vaughn* Index provides a
description of each redaction and the corresponding FOIA exemption being applied.  *See Exhibit
7 to SOMF – ICE's Vaughn Index*.

41.    The *Vaughn* index is in a table format and contains six headings:  "Entry
Number," "Bates Number," "Withholding: Full/Partial," "Description of Records and
Redactions, and Reasons for Redactions," and "Exemptions Applied", which contain the
following information:

- Entry Number refers to the specific entry number on the *Vaughn* index.

- Bates Number refers to the specific bate numbers stamped on each of the
  responsive documents.

- Withholding: Full/Partial refers to the level of withholdings taken on the
  documents.

- "Description of Records and Redactions, and Reasons for Redactions
  describes the redacted information and the justification for the redactions.

- Exemptions Applied describes the exemptions applied to the redactions in the
  documents.

## X.    DESCRIPTION OF FREEDOM OF INFORMATION ACT WITHHOLDINGS

### FOIA Exemption 4
### (codified at 5 U.S.C. § 552(b)(4))

42.    ICE has withheld from seven (7) pages of documents containing information
protected by FOIA Exemption 4 (Bates page numbers 2016-ICLI.00007 4, 9-12, and 16-17),
which protects trade secrets and information that is: (1) commercial or financial; (2) obtained

from a person; (3) and privileged or confidential.  Commercial or financial information is

deemed to be confidential if it would: (1) harm the government's ability to obtain the necessary

information in the future; or (2) cause a substantial harm to the competitive position of the

person from whom the information was obtained.

43.     ICE applied FOIA Exemption 4 to protect the following information in the

documents from disclosure: (1) bed-day rates and similar pricing information, as well as certain

other amounts charged under the contracts, to the extent the total number of available beds is

disclosed and would allow for the individual bed-day rate to be derived based on that

information; (2) the amount paid per day for job assignments; (3) the amount paid per day per

pupil for educational services; (4) the hourly overtime guard rate per officer; (5) the amount paid

per sack lunches; (6) the monthly rate for resident housing; and (7) the monthly rate for

transportation services.

44.     Detention facility contracts are subject to intense competition among private

contractors, and these contractors compete on these contracts largely based on price where very

small margins separate winning and losing bids.  Because ICE has disclosed the total amount to

be paid under the contract, the disclosure of the number of beds could be used to determine the

specific bed-day rate that the contractor charged ICE under the contract.  The bed-day rate

represents the per-detainee, per-day cost of housing a detainee, on which ICE relies when

comparing private contractors' bids.

45.     Upon review of information submitted by the private companies and ICE's Office

of Acquisition, ICE FOIA determined that disclosure of the bed-day rates, the amount paid per

day for job assignments, the amount paid per day per pupil for educational services, the hourly

overtime guard rate per officer, the amount paid per sack lunches, the monthly rate for resident

housing, and the monthly rate for transportation services, is likely to cause substantial

competitive harm to the private contractors by allowing a competitor to gain an unfair advantage

when negotiating future contracts for detention services with ICE, and underbidding that

contractor's proposal.

### FOIA Exemption 7
### (codified at 5 U.S.C. § 552(b)(7))
### Exemption 7 Threshold

46.     FOIA Exemption 7 requires establishing a threshold requirement that, to withhold

information on the basis of any of its subparts, the records or information must be compiled for

law enforcement purposes.

47.     The information for which FOIA Exemption 7 has been asserted in the instant

matter satisfies this threshold requirement.  Pursuant to the Immigration and Nationality Act

codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the

administration and enforcement of laws relating to the immigration and naturalization of aliens,

subject to certain exceptions.   *See* 8 U.S.C. § 1103.  ICE is the largest investigative arm of the

DHS and the second largest investigative agency in the federal government.  Created in 2003

through a merger of the investigative and interior enforcement elements of the U.S. Customs

Service and the Immigration and Naturalization Service, ICE now has more than 20,000

employees and offices in all 50 states and 48 foreign countries, and is responsible for enforcing

the nation's immigration laws, and identifying and eliminating vulnerabilities within the nation's

borders.

48.     Within ICE, ERO has broad authority and prioritizes the apprehension, arrest, and

removal of convicted criminals, those who pose a threat to national security, fugitives, recent

border entrants, and aliens who thwart immigration control.  ERO manages all logistical aspects

of the removal process, including domestic transportation, detention, alternatives to detention

programs, bond management, and supervised release.  ERO comprises seven headquarters

divisions and 24 Field Offices, and more than 7,600 employees.

49.     As a threshold matter, the records and information located in response to

Plaintiff's FOIA request relate to ICE's role as a law enforcement agency whose obligation is to

enforce the immigration laws of the United States by investigating and detaining individuals

who may be illegally present in the United States.  Additionally, the information is collected and

used by ICE to assist the agency in its mission of arresting and detaining certain aliens (including

those who pose a risk to public safety), ensuring that detained aliens do not escape from ICE

custody, and facilitating their appearance at or during immigration enforcement proceedings.

This information is critical to ensuring the operation and security of the detention facility, as well

as the security of the personnel and detainees inside the detention facility. Therefore, the records

and information located in response to the FOIA request were compiled for law enforcement

purposes and meet the threshold requirement of FOIA Exemption 7.

### FOIA Exemption 6 and 7(C)
### (codified at 5 U.S.C. § 552(b)(6) and (b)(7)(C))

50.     FOIA Exemption 6 provides that the FOIA does not apply to matters that are

"personnel and medical files and similar files, the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy."

51.     FOIA Exemption 7(C) protects from disclosure records or information "compiled

for law enforcement purposes" if a release of the records or information "could reasonably be

expected to constitute an unwarranted invasion of personal privacy."

52.     When asserting FOIA Exemptions 6 and 7(C), ICE balances an individual's

personal privacy interest against the public's interest in shedding light on ICE's performance of

its statutory duties.

53.     ICE has withheld information on one (1) page of documents containing information protected by FOIA Exemptions 6 and 7(C).  (*See* bates page number 2016-ICLI.00007 9.)  Specifically, ICE applied FOIA Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names, initials, suite numbers, and phone numbers of Federal law enforcement officers, other government employees, and contractors.

54.     By virtue of the positions held by the Federal law enforcement officers, other government employees, and contractors referenced in the responsive records, they are permitted access to official law enforcement investigation information.  ICE gave consideration to the privacy interests of these Federal employees in not becoming targets of harassment – including, but not limited to, harassment in the form of requests for authorized access to law enforcement information or requests for information about ongoing or closed investigations – and their interest in remaining free from interference with the performance of their duties by persons who are currently of interest to law enforcement or opposed the ICE mission.

55.     With respect to information specific to Federal law enforcement officers, other government employees, and contractors, the privacy consideration at issue includes the interest of each of these individuals in remaining free from harassment and annoyance in conducting their official duties in the future, their interest in remaining free from harassment and annoyance in their private lives, and their interest in not being targeted by individuals who may seek to do them harm.

56.     Disclosure of the information about the Federal law enforcement officers, other government employees, and contractors referenced in the responsive records would also constitute an unwarranted invasion of personal privacy and subject the individuals to embarrassment, harassment, and undue public attention.  Such information, if disclosed to the

public or to a third party requester without the permission of the individual, could expose the individual to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm the individual.

57.     Furthermore, third party individuals, including Federal law enforcement officers, other government employees, and contractors, have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes.  The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under FOIA Exemptions 6 and 7(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files.  The individuals' privacy interest in the information contained in the record outweighs any minimal public interest in the disclosure of the information.  Plaintiff has not articulated a sufficient public interest or public need to justify release of this information.  The disclosure of this Personally Identifiable Information ("PII") serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities.  Finally, the third parties mentioned in the law enforcement records did not consent to the disclosure of their PII.

58.     ICE determined that the disclosure of the information described in Paragraphs 53 through 57 above would constitute a clearly unwarranted invasion of personal privacy. Moreover, ICE determined that disclosure of the records and information described in Paragraphs 53 through 57, which were compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

59.     Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the

interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in shedding light on the operations and activities of ICE in the performance of its statutory duties.  In each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual or other personally identifiable information, which if released, would not shed light any further light as to the operations or activities of ICE.  Most if not all of the information surrounding the redactions was released and the limited extent of the redaction is readily apparent from the context of the records.

60.    Additionally, Plaintiff has not articulated any public interest that could be advanced by releasing the personally identifiable information of the individuals in question.  As such, releasing the information withheld per FOIA Exemptions 6 and 7(C) would not shed light on the operations of ICE or the government.

61.    Based upon the traditional recognition of strong privacy interests in law enforcement records, the categorical withholding of third party information identified in law enforcement records is appropriate.  Moreover, the third parties identified in these records have not provided consent to the release of their personally identifying information as required by 6 C.F.R. §§ 5.3(a) & 5.21(d).

**FOIA Exemption 7(E)**
**(codified at 5 U.S.C. §552(b)(7)(E))**

62.    FOIA Exemption 7(E) protects from disclosure records complied for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  It also protects from disclosure techniques and procedures that are not well known to the public.

63.     ICE has withheld from twelve (12) pages of documents containing information protected by FOIA Exemption 7(E). (*See* Bates page numbers 2016-ICLI.00007 11-12, and 16-25.)  Specifically, ICE has asserted FOIA Exemption 7(E) to protect from disclosure facility plan/blueprint codes, as well as portions of the facility plan/blueprint itself.  The facility plan/blueprint displays the layout of all locations within the detention facility, including, but not limited to, offices, cells, corridors, holding areas, armories, and medical areas.

64.     The release of this information could reasonably be expected to reveal where the detention facility would be most vulnerable to efforts to avoid detection and apprehension when organizing an escape or disturbance, and how to frustrate or thwart security measures or procedures to prevent or quell such incidents.  Public awareness of this operational information would aid those seeking to gain unauthorized entry to a detention facility holding ICE detainees, as they would readily know the detention facility's layout, which could be exploited to overrun and gain unauthorized entry to the facility or frustrate security measures taken while transporting ICE detainees.

65.     ICE has asserted FOIA Exemption 7(E) to protect from disclosure the facility plan/blueprint codes and the facility plan/blueprint that are not well known to the public, and which if disclosed could reasonably be expected to risk circumvention of the law.  As indicated above, the facility plan/blueprint plan is a document that shows the layout and location of all rooms and corridors at the detention facility.  In addition, the facility plan/blueprint is also not substantively responsive to the FOIA request.  To the extent that the facility plan/blueprint was responsive to the FOIA request, specifically as to the layout of the laundry room, this information was segregated and released to the requestor.  *See* 2016-ICLI-00007.23.

Declaration of Fernando Pineiro
*RAICES v. ICE*, Case No. 15-cv-1318 (JEB)

66.     While the public may generally know that detention facilities house ICE detainees and those facilities include various rooms such as offices, holding cells, armories, etc., the public does not know the exact layout of the facilities.  If the exact layouts were publicly known, plans and countermeasures could be developed to frustrate security measures at the facilities or while transporting detainees, thus corrupting the integrity of ongoing security and operational plans at the facilities, and potentially compromising facility staff and detainee safety.

## XI.   SEGREGABILITY

67.     5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

68.     A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

69.     With respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released.

## XII.  JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.  Signed this __29th____ day of June, 2016.


_____
Fernando Pineiro, Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

Declaration of Fernando Pineiro
*RAICES v. ICE*, Case No. 15-cv-1318 (JEB)